IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff | ) ) ) |
| v. | ) Criminal Action No. 22- 128-UNA ) |
| ANTONIO ADAMS, | ) ) |
| Defendant. | ) |

REDACTED

FILED
DEC 15 2022
U.S. DISTRICT COURT DISTRICT OF DELAWARE

## INDICTMENT

The Grand Jury for the District of Delaware charges that:

*Background*

At all times relevant to this Indictment:

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy in a variety of ways, including by fostering the establishment and viability of small businesses and aiding in their economic recovery after community disasters.

2. As part of its efforts, the SBA provided for business loans through banks, credit unions, and other lenders. Those loans had government-backed guarantees.

3. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act

1

was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

4. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and to make affirmative certifications to be eligible for the PPP loan. For example, in the PPP loan application, the business, through its authorized representative, had to state its average monthly payroll expenses and number of employees. In addition, businesses had to provide documentation showing their payroll expenses, as part of the PPP loan application process. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

5. Once a qualifying business completed a PPP application, a participating lender, or agent on behalf of the participating lender, processed the application. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which the SBA guaranteed. In the course of processing the PPP loan, the lender transmitted data from the loan application to the SBA, including information about the borrower, the total amount of the loan, and the identified number of employees.

6. Proceeds from a PPP loan were legally required to be used only for certain permissible business expenses, including payroll costs, mortgage interest,

rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness, if the business spent the loan proceeds on permissible items within a designated period of time and used a certain portion of the loan toward payroll expenses.

7. Between on or about May 15, 2020, and on or about April 14, 2021, ANTONIO ADAMS ("ADAMS") submitted eight (8) fraudulent applications, six (6) of which were approved, to the SBA and its authorized lenders in order to obtain loans through the PPP program established by the CARES Act. These eight (8) loan applications were made on behalf of five (5) entities controlled by ADAMS or his wife. Each of the loan applications falsely stated the number of employees and average monthly payroll and, in at least one instance, falsely claimed the businesses were in operation at the start of the Coronavirus Pandemic.

8. Once he obtained those PPP loan proceeds, defendant ADAMS caused those funds to be spent on unauthorized purchases and other personal expenses not permitted under the terms of the loans.

9. As a result of these false applications, ADAMS obtained approximately $786,674.00 from the six (6) approved loan applications.

## COUNT 1
### (Bank Fraud – AVM Solutions, LLC, WSFS)

10. On or about May 15, 2020, ADAMS submitted a fraudulent online application to Wilmington Savings Fund Society, FSB ("WSFS"), a federally insured financial institution, for a PPP Loan on behalf of AVM Solutions, LLC ("AVM").

ADAMS is the sole owner of AVM. In the application, ADAMS falsely represented that AVM employed seven (7) people and paid an average monthly payroll of $47,850.00.

11. As a result of this fraudulent application, on or about May 27, 2020, WSFS Bank approved the PPP Loan and deposited $119,625.00 into WSFS Account ending in 8555 ("WSFS 8555 Account"), an account in the name of AVM controlled by ADAMS.

12. Following the deposit of the loan proceeds into WSFS 8555 Account, ADAMS caused those funds to be used for purposes unrelated to the business and payroll expenses permissible under the terms of the loan. This included a payment for ADAMS' personal mortgage, in the amount of approximately $66,755.71; a $5,000.00 payment relating to the purchase of a vehicle; payments to the Internal Revenue Service of approximately $12,000.00; and cash withdrawals totaling approximately $37,000.00.

13. Contrary to the fraudulent representations made by ADAMS, ADAMS did not employ seven (7) people, pay a monthly payroll of $47,850.00, or use the funds for permissible business and payroll expenses under the terms of the loan.

*Charging Paragraph*

14. From on or about May 15, 2020 to on or about May 27, 2020, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, did knowingly execute a scheme and artifice to defraud WSFS, a federally insured financial institution, and to obtain moneys, funds, and other property under the

custody and control of WSFS, by means of materially false and fraudulent pretenses, representations, and promises, as described more fully in paragraphs 1-13 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1344(1) and (2).

## COUNT 2

### (False Statement to a Financial Institution – AVM Solutions, LLC, WSFS)

15. On or about February 18, 2021, ADAMS filed a PPP loan forgiveness application with WSFS and falsely and fraudulently asserted that the entire loan amount for $119,625.00 had been spent on payroll costs.

16. On or about February 24, 2021, WSFS Bank forgave the PPP loan.

*Charging Paragraph*

17. On or about February 18, 2021, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, knowingly made a false statement for the purpose of influencing WSFS, a federally insured financial institution, in connection with the forgiveness of the PPP loan provided to AVM Solutions, LLC, on or about May 27, 2020, in that the defendant falsely stated that the proceeds of the loan had been used solely for payroll expenses, when in truth and in fact, as the defendant well knew, he used loan proceeds for other purposes including the payment of his personal mortgage, the purchase of a vehicle, payments to the IRS, and other non-business related cash expenditures.

All in violation of Title 18, United States Code, Section 1014.

## COUNT 3

### (Bank Fraud – AVM Solutions, LLC, Northeast Bank)

18. On or about February 26, 2021, ADAMS submitted a fraudulent online application to Northeast Bank for a second PPP Loan on behalf of AVM. In the application, ADAMS claimed to still employ seven (7) individuals and falsely represented an increase of the average monthly payroll to $59,999.00.

19. As a result of this fraudulent application, on or about March 2, 2021, Northeast Bank approved the PPP Loan and deposited $149,997.00 into WSFS 8555.

20. Following the deposit of the loan proceeds into WSFS 8555 Account, ADAMS caused those funds to be used for purposes unrelated to the business and payroll expenses permissible under the terms of the loan. This included payments for ADAMS' personal debts including a credit balance at Lowe's, in the amount of approximately $10,000.00; another personal credit card balance, in the amount of approximately $4,826.30; a loan relating to the purchase of several vehicles, in the amount of approximately $109,000.00; and cash withdrawals totaling approximately $36,000.00.

21. Contrary to the fraudulent representations made by ADAMS, ADAMS did not employ seven (7) people, pay a monthly payroll of $59,999.00, or use the funds for permissible business and payroll expenses under the terms of the loan.

*Charging Paragraph*

22. From on or about February 26, 2021 to on or about March 2, 2021, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, did

6

knowingly execute a scheme and artifice to defraud Northeast Bank, a federally insured financial institution, and to obtain moneys, funds, and other property under the custody and control of Northeast Bank, by means of materially false and fraudulent pretenses, representations, and promises, as described more fully in paragraphs 1-13 and 18-21 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1344(1) and (2).

## COUNT 4
### (Bank Fraud – AVM Solutions, LLC, Bank of America)

23. On or about April 14, 2021, ADAMS submitted a fraudulent online application to Bank of America California, National Association ("BOA"), a federally insured financial institution, for a third PPP Loan on behalf of AVM. In the application, ADAMS claimed to still employ seven (7) individuals and falsely represented a decrease of the average monthly payroll to $47,850.00. The application included an incorrect Employee Identification Number ("EIN") and payroll summaries, which differed from the payroll summaries for the same time period provided in the May 15, 2020 application to WSFS.

24. On or about April 14, 2021, BOA denied the application.

*Charging Paragraph*

25. From on or about April 14, 2021, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, did knowingly execute and attempt to execute a scheme and artifice to defraud BOA, a federally insured financial institution, and to obtain moneys, funds, and other property under the custody and

control of BOA, by means of materially false and fraudulent pretenses, representations, and promises, as described more fully in paragraphs 1-13, 18-21, and 23-24 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1344(1) and (2).

## COUNT 5

### (Bank Fraud – A&M Group LLC, Fountainhead)

26. On or about May 18, 2020, ADAMS submitted a fraudulent online application to Fountainhead SBF, LLC ("Fountainhead"), for a PPP Loan on behalf of A&M Group LLC ("A&M"). ADAMS is the sole owner of A&M. In the application, ADAMS falsely represented that A&M employed seven (7) people, paid an average monthly payroll of $59,998.00, and paid $850,759.00 in 2020 wage compensation.

27. As a result of this fraudulent application, on or about June 4, 2020, Fountainhead approved the PPP Loan and deposited $129,600.00 into Artisans Bank account ending in 4171 ("Artisans 4171"), an account in the name of A&M controlled by ADAMS.

28. Following the deposit of the loan proceeds into Artisans 4171 Account, ADAMS caused those funds to be used for purposes unrelated to the business and payroll expenses permissible under the terms of the loan. This included a payment for ADAMS' mortgage, in the amount of approximately $6,000.00; a $75,000.00 payment for a personal loan; a payment of approximately $2,200.00 for jewelry; and cash withdrawals totaling approximately $32,000.00.

29. Contrary to the fraudulent representations made by ADAMS, ADAMS

did not employ seven (7) people, pay a monthly payroll of $59,998.00, pay $850,759.00 in 2020 wage compensation, conduct legitimate business, or use the funds for permissible business and payroll expenses under the terms of the loan.

*Charging Paragraph*

30. From on or about May 18, 2020 to on or about June 4, 2020, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, did knowingly execute a scheme and artifice to defraud Fountainhead, a small business investment company, and to obtain moneys, funds, and other property under the custody and control of Fountainhead, by means of materially false and fraudulent pretenses, representations, and promises, as described more fully in paragraphs 1-9 and 26-29 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1344(1) and (2).

## COUNT 6
### (Bank Fraud – A&M Group, LLC, Fountainhead)

31. On or about March 4, 2021, ADAMS submitted a fraudulent online application to Fountainhead for a second PPP Loan on behalf of A&M Group LLC ("A&M"). ADAMS is the sole owner of A&M. In the application, ADAMS falsely represented that A&M employed seven (7) people, paid an average monthly payroll of $59,998.00, and paid $850,759.00 in 2020 wage compensation.

32. In support of the application, ADAMS submitted digitally manipulated bank statements to appear as legitimate payroll expenses for A&M.

33. On or about March 24, 2021, Fountainhead denied the PPP Loan

application.

34. Contrary to the fraudulent representations made by ADAMS, ADAMS did not employ seven (7) people, pay a monthly payroll of $59,998.00, pay $850,759.00 in 2020 wage compensation, conduct legitimate business, or use the funds for permissible business and payroll expenses under the terms of the loan.

*Charging Paragraph*

35. From on or about March 4, 2021 to on or about March 24, 2021, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, did knowingly execute and attempt to execute a scheme and artifice to defraud Fountainhead, a small business investment company, and to obtain moneys, funds, and other property under the custody and control of Fountainhead, by means of materially false and fraudulent pretenses, representations, and promises, as described more fully in paragraphs 1-9, 26-29, and 31-34 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1344(1) and (2).

## COUNT 7

### (False Statement to a Financial Institution –
### A&M Group LLC, Fountainhead)

36. On or about May 28, 2021, ADAMS filed a PPP loan forgiveness application with Fountainhead, a small business investment company, and falsely and fraudulently asserted that the entire loan amount for $129,600.00 had been spent on payroll costs.

37. On or about June 4, 2021, Fountainhead forgave the PPP loan.

*Charging Paragraph*

38. On or about June 4, 2021, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, knowingly made a false statement for the purpose of influencing Fountainhead, a small business investment company, in connection with the forgiveness of the PPP loan provided to A&M Group LLC on or about May 18, 2020, in that the defendant falsely stated that the proceeds of the loan had been used solely for payroll expenses, when in truth and in fact, as the defendant well knew, he used loan proceeds for other purposes including the payment of his personal mortgage, repayment of a personal loan, the purchase of jewelry, and other non-business related cash expenditures.

All in violation of Title 18, United States Code, Section 1014.

## COUNT 8

### (Bank Fraud – AVS Properties LLC, PNC Bank)

39. On or about March 10, 2021, ADAMS submitted a fraudulent online application to PNC Bank, National Association ("PNC Bank") for a first PPP Loan on behalf of AVS Properties LLC ("AVS"). ADAMS is the sole owner of AVS. In the application, ADAMS falsely represented that AVS employed ten (10) people, paid an average monthly payroll of $68,165.00, and paid $817,980.00 in 2020 wage compensation.

40. As a result of this fraudulent application, on or about March 19, 2021, PNC Bank approved the PPP Loan and deposited $170,412.00 into PNC account

ending in 5619 ("PNC 5619"), an account in the name of AVS controlled by ADAMS.

41. Following the deposit of the loan proceeds into PNC 5619 Account, ADAMS caused those funds to be used for purposes unrelated to the business and payroll expenses permissible under the terms of the loan. This included a payment of $32,091.69 for an automobile loan and cash withdrawals totaling approximately $11,000.00.

42. Contrary to the fraudulent representations made by ADAMS, ADAMS did not employ ten (10) people, pay a monthly payroll of $68,165.00, pay $817,980.00 in 2020 wage compensation, conduct legitimate business, or use the funds for permissible business and payroll expenses under the terms of the loan.

*Charging Paragraph*

43. From on or about March 10, 2021 to on or about March 19, 2021, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, did knowingly execute a scheme and artifice to defraud PNC Bank, a federally insured financial institution, and to obtain moneys, funds, and other property under the custody and control of PNC Bank, by means of materially false and fraudulent pretenses, representations, and promises, as described more fully in paragraphs 1-9 and 39-42 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1344(1) and (2).

## COUNT 9

### (Bank Fraud – A1 Home LLC, Citizens Bank)

44. On or about March 17, 2021, ADAMS submitted a fraudulent online

application to Citizens Bank, National Association ("Citizens Bank") for a first PPP Loan on behalf of A1 Home LLC ("A1"). ADAMS is the sole owner of A1. In the application, ADAMS falsely represented that AVS employed seven (7) people and paid an average monthly payroll of $47,850.00.

45. Contrary to the fraudulent representations made by ADAMS, A1 was not incorporated until September 2020 and therefore was not eligible to receive a PPP Loan.

46. As a result of this fraudulent application, on or about March 18, 2021, Citizens Bank approved the PPP Loan and deposited $39,800.00 into Citizens Bank account ending in 6165 ("Citizens 6165"), an account in the name of A1 controlled by ADAMS.

47. Following the deposit of the loan proceeds into Citizens 6165 Account, ADAMS caused those funds to be used for purposes unrelated to the business and payroll expenses permissible under the terms of the loan. This included a payment of approximately $25,000.00 for a home mortgage.

48. Contrary to the fraudulent representations made by ADAMS, ADAMS did not employ seven (7) people, pay a monthly payroll of $47,850.00, conduct legitimate business, or use the funds for permissible business and payroll expenses under the terms of the loan.

*Charging Paragraph*

49. From on or about March 17, 2021 to on or about March 18, 2021, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, did

knowingly execute a scheme and artifice to defraud Citizens Bank, a federally insured financial institution, and to obtain moneys, funds, and other property under the custody and control of Citizens Bank, by means of materially false and fraudulent pretenses, representations, and promises, as described more fully in paragraphs 1-9 and 44-48 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1344(1) and (2).

## COUNT 10

### (Bank Fraud – Sweetie Pie Bakers, PNC Bank)

50. On or about March 24, 2021, ADAMS submitted a fraudulent online application to PNC Bank for a First Draw PPP Loan on behalf of Sweetie Pie Bakers, LLC ("Sweetie Pie"). In the application, ADAMS falsely represented that Sweetie Pie employed seven (7) people, paid an average monthly payroll of $70,896.00, and paid $850,759.00 in 2020 wage compensation.

51. As a result of this fraudulent application, on or about April 1, 2021, PNC Bank approved the PPP Loan and deposited $177,240.00 into PNC Bank account ending in 0199 ("PNC 0199"), an account in the name of Sweetie Pie controlled by ADAMS.

52. Following the deposit of the loan proceeds into PNC 0199 Account, ADAMS caused those funds to be used for purposes unrelated to the business and payroll expenses permissible under the terms of the loan. This included a payment of approximately $72,500.00 to AVS Solutions LLC, which was used for payment of $32,091.69 for an automobile loan and cash withdrawals totaling approximately

$26,000.00.

53. Contrary to the fraudulent representations made by ADAMS, ADAMS did not employ seven (7) people, pay a monthly payroll of $70,896.00, pay $850,759.00 in 2020 wage compensation, conduct legitimate business, or use the funds for permissible business and payroll expenses under the terms of the loan.

*Charging Paragraph*

54. From on or about March 24, 2021 to on or about April 1, 2021, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, did knowingly execute a scheme and artifice to defraud PNC Bank, a federally insured financial institution, and to obtain moneys, funds, and other property under the custody and control of Citizens Bank, by means of materially false and fraudulent pretenses, representations, and promises, as described more fully in paragraphs 1-9 and 50-53 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1344(1) and (2).

## COUNT 11

### (Money Laundering)

55. Paragraphs 1-9 and 39-43 are fully incorporated herein.

56. On or about April 5, 2021, in the District of Delaware and elsewhere, ANTONIO ADAMS, defendant herein, did knowingly engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, ADAMS delivered a check in the amount of $32,091.69, from PNC 5619, payable to

15

Dexsta Federal Credit Union, as payment for a 2019 Ford Super Duty F-250, VIN 1FT7W2B67KEF36315, such property having been derived from specified unlawful activity, that is Bank Fraud as set forth in Count Eight above.

All in violation of Title 18, United States Code, Sections 1957.

///

## NOTICE OF FORFEITURE

Upon conviction of the offenses alleged in Counts One through Ten of this Indictment, ANTONIO ADAMS, defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c), 18 U.S.C. § 981(a)(2), and 28 U.S.C. § 2461, any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation, including but not limited to:

   a. 2019 Ford Super Duty F-250, VIN 1FT7W2B67KEF36315;

   b. $201,746.04 seized from PNC Bank account ending in 5619;

   c. $62,965.03 seized from PNC Bank account ending in 0199; and

   d. $7,228.38 seized from Citizens Bank account ending in 6165;

Upon conviction of the offense alleged in Count Eleven of this Indictment, ANTONIO ADAMS, defendant herein shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property involved in the violation or traceable to property involved in said violation, including but not limited to:

   a. 2019 Ford Super Duty F-250, VIN 1FT7W2B67KEF36315.

If the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL:

_____
Foreperson

DAVID C. WEISS
UNITED STATES ATTORNEY

BY: _____
Kevin P. Pierce
Assistant United States Attorney

Dated: 12.15.22